**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION**

| | | |
|---|---|---|
| WIN WIN AVIATION, INC. | ) | |
| An Illinois Corporation, | ) | |
|         Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| SHERIFF'S DEPARTMENT OF RICHLAND | ) | |
| COUNTY, SOUTH CAROLINA; LEON LOTT, in | ) | |
| his capacity as Sheriff of Richland County, South | ) | |
| Carolina; ROBIN L. HOLMES, State of South | ) | |
| Carolina 1033 Program Coordinator; THE UNITED | ) | |
| STATES OF AMERICA; and ASHTON CARTER, | ) | |
| in his capacity as the United States Secretary | ) | |
| of Defense, | ) | |
|         Defendants. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This is a civil action seeking declaratory and injunctive relief.

2. Defendant, United States of America (hereinafter "the USA"), by and through its counsel in the Department of Defense, has demanded through Defendant Robin L. Holmes, in her capacity as State of South Carolina 1033 Program Coordinator (hereinafter "Holmes"), that Defendant Sheriff's Department of Richland County, South Carolina (hereinafter "the Sheriff's Department") and Leon Lott (hereinafter "Lott"), as Sheriff of said County, return certain airplanes in the possession and custody of the Plaintiff and turn them over to the control and possession of the United States Department of Defense.

3. The Sheriff's Department has demanded that Win Win Aviation, Inc. return those same airplanes to the State of South Carolina to turn those planes over to the United States Department of Defense, thereby depriving the Plaintiff of their use and possession.

4. Win Win Aviation, Inc. takes issue with the Defendants' broad assertions of rights over the airplanes and instead believes that its use of those airplanes is in conformity with the agreement it has with the Sheriff's Department, the regulations of the Department of Defense, and the Memorandum of Agreement in place and agreed to by the Sheriff's Department and Department of Defense at the time of the execution of said agreement.

5. Furthermore, the Plaintiff believes that it will be irreparably harmed if the Defendants exercise the now-threatened and demanded control over the airplanes in question.

6. This declaratory action seeks to resolve that dispute and to enjoin the Defendants from taking any action depriving the Plaintiff of its use of the airplanes.

1

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1331-Federal Question Jurisdiction and 28 U.S.C. § 1361-Mandamus Jurisdiction as to the defendants the USA Ashton Carter, in his capacity as Secretary of Defense (hereinafter "Carter").

8. The Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1332(a)-Diversity Jurisdiction-as to the Sheriff's Department, Lott, and Holmes, as the value of the injunction sought exceeds $75,000.00 and there is complete diversity between the South Carolina Defendants and the Plaintiff.

9. Additionally, the Court has subject matter jurisdiction over the Sheriff's Department, Lott, and Holmes, pursuant to 28 U.S. Code § 1367-Supplemental Jurisdiction, because the claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10. Personal jurisdiction and venue are proper because Plaintiff is informed, believes, and thereon alleges that the Sheriff's Department and Lott have sufficient minimum contact with this District, in particular, with the events herein alleged, including but not limited to the fact that the Sheriff's Department and Lott solicited the Plaintiff to enter into an agreement, which gave Plaintiff possession of the planes in question, and that Plaintiff entered into and executed that agreement in this District. A true and accurate copy of that agreement is attached hereto and incorporated by reference as Exhibit A.

11. Venue is further proper in this District because the airplanes which are currently under threat of seizure by the Defendants are currently and primarily located in this District where they are housed and where they remain when not in service pursuant to the contract.

12. Further, and most obviously, venue is proper in this District because the Plaintiff is an Illinois corporation, duly formed under Illinois law, with a principal place of business and headquartered in this District.

13. Summarily, venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to the claim occurred in the Northern District of Illinois. Specifically, Defendants have sent correspondences via U.S. mail and electronic mail to counsel for the Plaintiff situated in this District demanding the return of the airplanes in this case as well as advising of their attempts to seize said planes. These correspondences have affected parties residing in the Northern District of Illinois. True and accurate copies of said correspondences is attached hereto and incorporated by reference herein as group Exhibit B.

## COMMON ALLEGATIONS

14. Plaintiff restates and realleges paragraphs 2 through 5 above as and for paragraph 14 of these Common Allegations with the same force and effect as though fully set forth herein.

15. Plaintiff Win Win Aviation, Inc. is an Illinois corporation with its principal place of business and registered agent and office located in the City of DeKalb, County of DeKalb, State of Illinois.

16. The Defendant Sheriff's Department is a unit of Richland County, South Carolina government and the agency charged with the law enforcement for the unincorporated areas of Richland County, South Carolina.

17. Defendant Lott is the duly-elected Sheriff of Richland County, South Carolina.

18. Defendant Carter is the current Secretary of the Department of Defense of the United States of America.

19. The Plaintiff and Sheriff's Department entered into what is attached as Exhibit A hereto entitled "Aircraft Exchange and Use Agreement" (hereinafter "the Agreement) on or about June 23, 2013. The Agreement was signed by Lott on behalf of the Sheriff's Department.

20. The Plaintiff's entry into the Agreement was solicited by the Sheriff's Department and Lott because the Sheriff's Department and Lott believed that the Plaintiff's aircraft (the "Cessna") was better suited to the purposes for which the Sheriff's Department wished to use airplanes in furtherance of law enforcement than its planes (the "Sherpas"), which the Sheriff's Department had obtained pursuant to a separate agreement it had with the USA's Department of Defense under what is referred to as the "Section 1033 Surplus Property Office Program of the National Defense Authorization Act of 1997 (hereinafter "1033 Program").

21. Prior to executing the Agreement, the Sheriff's Department and Lott assured Plaintiff that Holmes, as the State 1033 Program Coordinator, had reviewed the Agreement and assured the Sheriff's Department and Lott that the content thereof was permissible under the Program.

22. Moreover, upon information and belief, the then-operative Memorandum of Agreement between the State of South Carolina and the USA Department of Defense allowed the uses contemplated by the Agreement.

23. Neither the Sheriff's Department nor the USA has produced any written contract or understanding therein between them, although the 1033 Program is referenced in the Agreement between the Plaintiff and the Department.

24. Although the Agreement "speaks for itself," the general parameters thereof allowed for an exchange of aircraft between the Plaintiff and Sheriff's Department whereby the Sheriff's Department would have the exclusive use of the Plaintiff's Cessna and the Sheriff's Department would grant the Plaintiff the right to use two if "its" Sherpas which it obtained from the USA Department of Defense pursuant to the aforementioned 1033 Program.

25. The Agreement further contemplated the eventual outright transfer of title of all of the planes in question to the users, as of a date in the future when the Sheriff's Department was "permitted, under the 1033 Program, to dispose of the Sherpas."

26. On the face of the Agreement, the Sheriff's Department represented and warranted that "it holds good title to the Sherpas, free of any liens or encumbrances and, subject to the restrictions of the 1033 Program, has the unrestricted ability to convey good title to the Sherpas to (the Plaintiff)" and that it also "has the right, prior to the Exchange Date, to enter into the Agreement and make the Sherpas available for use by (the Plaintiff)"

27. Gauging the condition of the Sherpas based on its inspection thereof, the Plaintiff determined that, in order to utilize them and let them out for contract services, it would need to invest hundreds of thousands of dollars in modifications and upgrades to the Sherpas. This fact was known by the Sheriff's Department at the time of execution of the Agreement.

28. Because it would eventually take title to the Sherpas, as indicated in the Agreement, and that it would have the unfettered use of the Sherpas until title was transferred, the Plaintiff elected to enter into the Agreement and invest in modifications and upgrades to the Sherpas.

29. Shortly after taking possession of the Sherpas, the Plaintiff transferred its Cessna to the Department, took possession of the Sherpas, and undertook the modifications and upgrades necessary and spent upwards of $500,000.00 per aircraft in order to make the planes suitable for contract work.

30. The Plaintiff did thereafter enter into numerous contracts related to its use and operation of the Sherpas with branches of the United States military and thereby became obligated to fulfill such contracts with the Sherpas at issue.

31. Fulfillment of those contracts is a sine qua non to not only avoiding defense against breach of contract actions but also to avoid being subject to a negative review by the Commercial Airlift Review Board (CARB) under its PPR (Past Performance Review). Furthermore, non-fulfillment of those contracts would result in Plaintiff not having access to future contracts available to AMC (Air Mobility Command) vendors.

32. In the event that the Plaintiff is not able to fulfill the contracts at issue, resulting in the previously alleged negative review, it will suffer irreparable harm as it will be shutout from the very contracts that are its lifeblood.

33. In addition, there is the potential for harm to third parties to those contracts, namely those branches of the military which have contracted with Plaintiff for the use of the Sherpas in their operations.

34. Upon information and belief, the USA Department of Defense has terminated the Sheriff's Department from participation in the Program and demanded the return of the Sherpas.

35. As first alleged above, Holmes, in her capacity as State of South Carolina 1033 Program Coordinator, has demanded that the Sheriff's Department and Lott return the Sherpas, currently in the possession and custody of the Plaintiff, and turn them over to the control and possession of the United States Department of Defense. The Sheriff's Department has likewise demanded that Plaintiff return the Sherpas.

36. Neither Holmes nor the Sheriff's Department has demanded the return of the Sherpas for the purposes of an inspection as contemplated by and permitted in the Agreement. Instead, as demanded in writing by both Holmes and the Sheriff's Department, and as stated by counsel for the Sheriff's Department in conversations between said counsel and the attorney for Plaintiff, the purpose of the demand for the return of the Sherpas is to return them to the USA Department of Defense, which return is not contemplated by or permitted in the Agreement.

37. In fact, there was previously a demand for an inspection of the Sherpas as contemplated by and permitted in the Agreement. In response to said demand, Plaintiff advised the Sheriff's Department and Holmes that one of the aircraft was outside of the State of South Carolina undergoing maintenance but that the other Sherpa, which was likewise out of the State, could be returned to South Carolina to undergo said inspection. The Sheriff's Department and Holmes agreed for Plaintiff to return the one Sherpa for inspection, which Plaintiff did on August 25, 2014, at which time Holmes inspected it and approved its continued use by Plaintiff.

**COUNT I-SEEKING DECLARATION THAT THE PLAINTIFF HAS THE RIGHT TO CONTINUED USE AND EVENTUAL TRANSFER OF TITLE BY THE DEPARTMENT PER THE AGREEMENT AND IN CONFORMITY WITH THE 1033 PROGRAM**

38. Plaintiff restates and realleges paragraphs 14 through 37 of the Common Allegations above as and for paragraph 38 of this Count I with the same force and effect as though fully set forth herein.

39. Upon information and belief, the Plaintiff alleges that under the 1033 Program and the operative Memorandum of Agreement between the State of South Carolina and the USA

Department of Defense, the agencies to which the use of surplus equipment is granted are given the option to dispose of or sell some goods after at least one year of usage.

40. Upon information and belief, the Sherpas were allowed to be transferred in such a fashion and the Department had used them for at least one year of service.

41. Furthermore, the Agreement may only be terminated by either the Plaintiff or the Department "for cause" and no such cause exists here. As such, the demand for the return of and, ultimately, the seizure of the Sherpas is not in conformity with the Agreement and, to the contrary, the Plaintiff is within its rights to continue utilizing the Sherpas.

42. In light of the above and foregoing, it is appropriate for this Court to (1) determine that there exists no right of either Defendant to demand the return of and to seize the Sherpas and (2) further make a determination as the Agreement's compliance with the 1033 Program.

**COUNT II-SEEKING INJUNCTIVE RELIEF AGAINST THE SEIZURE OF THE SHERPA AIRCRAFT**

43. Plaintiff restates and realleges paragraphs 14 through 37 of the Common Allegations above as and for paragraph 43 of this Count II with the same force and effect as though fully set forth herein.

44. While the Plaintiff is currently in possession of the Sherpas, there is a real and substantial danger that it could be deprived of those aircraft in very short order by the Defendants, as they have indicated such is their intention.

45. As stated herein, there are not grounds for any of the Defendants to seize possession of the Sherpas, to attempt to assert control over them in any way, including "de-registering" them with the Federal Aviation Administration, short of a replevin action allowing them the right to do so.

46. Specifically, the Plaintiff is both in compliance with the Agreement with the Department, having relinquished control of its Cessna as well as not in violation of the section 1033 Program of the USA.

47. If any of the Defendants are successful in seizing the aircraft, the Plaintiff will be prevented from completing the contracts to which it has pledged the Sherpas, subjecting it to causes of action sounding in breach of contract brought by the various branches of the military.

48. Furtherrmore, as first alleged above, the Plaintiff will be subject to a negative review by the Commercial Airlift Review Board (CARB) under its PPR (Past Performance Review). Furthermore the Plaintiff shall not have access to future contracts available to AMC (Air Mobility Command ) vendors for its non-compliance with the contracts.

49. The Plaintiff does not have an adequate remedy at law or otherwise for the harm or damage threatened to be done by Defendants because the totality of monetary damages is not only speculative in light of the defense of contract breach claims but, more importantly, crippling of the Plaintiff's ability to function as an ongoing concern.

50. The Plaintiff will suffer irreparable harm, damage, and injury unless the acts and conduct of Defendants are enjoined from demanding the return of and seizing the Sherpas and taking over possession thereof.

51. Therefore, it is just and appropriate for this Court to enjoin the threatened seizure of the Sherpas and for any further relief deemed equitable.

WHEREFORE, the plaintiff prays that the Court make a determination by way of a Declaratory Judgment that the Plaintiff is entitled to maintain possession of the Sherpa aircraft and to enjoin the Defendants from their threatened and any actual seizure thereof and for any further relief deemed just and equitable.

    Respectfully Submitted

    /s/Chris Cosentino

Chris Cosentino
Illinois ARDC# 6272089
The Cosentino Law Firm
801 E. Main Street
St. Charles, IL 60174
(630) 377-9730

    Respectfully submitted,

    /s/ Mark P. Doherty

Mark P. Doherty
Illinois ARDC# 6272150
The Doherty Law Firm, LLC
125 North First Street
DeKalb, Illinois 60115
815.787.6666

## **VERIFICATION**

Under penalties as provided by law, the undersigned certifies that the statements set forth in this Complaint for Declaratory and Injunctive Relief are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

    WIN WIN AVIATION, INC.

    By:    /s/ Andri Wiese

    Its:    President