# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Win Win Aviation, Inc., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No: 15 C 50051 |
| | ) | |
| Richland County, South Carolina Sheriff's Dept., et al., | ) ) | |
| | ) | |
| *Defendants*. | ) | Judge Frederick J. Kapala |

## ORDER

Plaintiff's motion for temporary restraining order [5] is granted. Defendants are prohibited from taking any further action to seize, impound, de-register, or otherwise exercise control over the two C-23 Sherpa aircraft in plaintiff's possession, including invoking any rights the United States may have to recover the planes under 10 U.S.C. § 2790. Absent further order of the court, this temporary restraining order will expire 14 days after entry. Plaintiff shall post a security bond in the amount of $1,000,000 pursuant to Fed. R. Civ. P. 65(c).

## STATEMENT

Plaintiff, Win Win Aviation, Inc., has filed a motion for a temporary restraining order ("TRO") seeking to enjoin defendants, Sheriff's Department of Richland County, South Carolina; Leon Lott, in his capacity as Sheriff of Richland County; Robin L. Holmes, the State of South Carolina 1033 Program Coordinator; the United States of America; and Ashton Carter, in his capacity as the United States Secretary of Defense, from taking "any action in furtherance of seizing, impounding, de-registering or otherwise exercising control over two used C-23 Sherpa aircraft, Serial # SH.3208 (Tail # N789WW) and Serial # SH.3211 (Tail # N567WW)." Plaintiff provided notice of the motion for a TRO, the United States filed a response, and the court held a hearing on the matter. For the reasons stated below, the motion for a TRO is granted.

## I. BACKGROUND[1]

On June 23, 2013, plaintiff and the Sheriff's Department of Richland County, South Carolina (the "Department"), executed an "Aircraft Exchange and Use Agreement." As part of the agreement, the Department represented that it was the owner of the two Sherpas at issue in this case, and that those Sherpas "were or are to be acquired by the Department under Section 1033 Surplus

---

[1] Any factual findings in this order are based on the limited record presented to the court in this expedited matter and are only to be used for purposes of the TRO. These findings will not be considered conclusive for any future proceedings and may be refuted with subsequent evidence.

Property Office Program of the National Defense Authorization Act of 1997 (the "1033 Program"), which authorizes the Department of Defense to transfer excess military property to state and local enforcement agencies." In general, the agreement contemplated that the parties would make an "even exchange" of a Cessna 206 aircraft that plaintiff owned for the two Sherpas that were acquired by the Department. The agreement noted that the exchange could not occur until the Department was permitted, under the terms of the 1033 Program, to dispose of the Sherpas, but the agreement also provided that each party could still use the aircraft that were subject to the exchange agreement prior to the actual exchange of title. As a result of this agreement, plaintiff is currently in possession of the two Sherpas and has been using them, and will continue to use them, in its business, which includes providing the Sherpas for use in training exercises by various United States military organizations.

In its response, the United States indicates that the Department of Defense ("DOD") administers the 1033 Program through the Defense Logistics Agency ("DLA"), which in turn relies on its Law Enforcement Support Office ("LESO") to carefully control access to surplus DOD equipment. According to the government, the LESO transferred possession of the aircraft, but not title, to the Department on June 17, 2013, and that it did not learn of the Department's contract with plaintiff until around January 12, 2015. The government argues that the transfer of the Sherpas to plaintiff was not authorized under the terms of the 1033 Program, and that pursuant to 10 U.S.C. § 2790 it has the right to recover that property from plaintiff.

## II. ANALYSIS

### A. Sovereign Immunity

As an initial matter, the government argues in its response that this court lacks subject matter jurisdiction to grant the requested TRO because there has been no explicit waiver of sovereign immunity in this matter. This argument fails for a couple of reasons. First, the Seventh Circuit has held that "sovereign immunity does not diminish a court's subject-matter jurisdiction." Blagojevich v. Gates, 519 F.3d 370, 371 (7th Cir. 2008). The Court explained that "the [sovereign immunity] doctrine is non-jurisdictional," and that "[s]overeign immunity concerns the remedy rather than adjudicatory competence." Id.; see also Quinn v. Gates, 575 F.3d 651, 653 (7th Cir. 2009) (explaining that "sovereign immunity is not a jurisdictional issue"). Accordingly, this court has subject matter jurisdiction to hear this case pursuant to 28 U.S.C. § 1331.

Second, even if there are some jurisdictional concerns associated with the sovereign immunity doctrine, "Congress has waived sovereign immunity for most forms of prospective relief." Blagojevich, 519 F.3d at 371. Section 702 of the Administrative Procedure Act ("APA") provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. This waiver of immunity found in § 702 is "generally applicable" and is not limited only to claims reviewable through the APA. Blagojevich, 519 F.3d at 371; see also Mich. v. U.S. Army Corps of Eng'rs, 667 F.3d 765, 775 (7th Cir. 2011) ("[T]he waiver in § 702 is not limited to

2

claims brought pursuant to the review provisions contained in the APA itself."); Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 186 (D.C. Cir. 2006) ("[T]he APA's waiver of sovereign immunity applies to any suit whether under the APA or not." (quotation marks omitted)). In this case, because plaintiff is "seeking relief other than money damages," the waiver of sovereign immunity in § 702 is applicable. See U.S. Army Corps of Eng'rs, 667 F.3d at 774 ("The waiver covers actions that seek specific relief other than money damages; this aptly describes the plaintiffs' claim for declaratory and injunctive relief.").

## B. Temporary Restraining Order

In order to obtain preliminary injunctive relief, "the moving party must demonstrate a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent the injunction." Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health, 699 F.3d 962, 972 (7th Cir. 2012); see also Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc., No. 01 C 585, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001) (noting that "[t]he standards for a temporary restraining order and a preliminary injunction are identical" (quotation marks omitted)). "If it makes this threshold showing, the district court weighs the balance of harm to the parties if the injunction is granted or denied and also evaluates the effect of an injunction on the public interest." Planned Parenthood, 699 F.3d at 972; see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008) (explaining that, after the threshold showing has been made, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief"). At this stage of the analysis, "the court employs a sliding scale approach: the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." Girl Scouts, 549 F.3d at 1086 (alteration and quotation marks omitted). "Taking into account all these considerations, the district court must exercise its discretion to arrive at a decision based on a subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." Id. (quotation marks omitted).

### 1. Likelihood of Success on the Merits

In order to meet the threshold showing of a likelihood of success on the merits, plaintiff must show that it has a 'better than negligible' chance of success on the merits of at least one of its claims." Id. at 1096; see also Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc., 128 F.3d 1111, 1114 (7th Cir. 1997) ("In the preliminary injunction context, a 'likelihood of success' exists if the party seeking injunctive relief shows that it has a 'better than negligible' chance of succeeding on the merits."). "This is an admittedly low requirement and is simply a threshold question." Girl Scouts, 549 F.3d at 1096. Here, the court finds that plaintiff has made this threshold showing and has demonstrated at least a "better than negligible" chance of success on the merits.

According to the "State of South Carolina 1033 Program Plans, Polices and Procedures," which is attached as Exhibit 2 to the government's response, the ability of the Department to dispose of any property it received through the 1033 Program is based on the "DEMIL code" assigned to the property. Property with a DEMIL code A "does not require demilitarization and may be disposed after obtaining State Coordinator and LESO approval," whereas other types of property, such as those with DEMIL code C, will not be approved for disposal and must be transferred to

3

another law enforcement agency or returned when no longer needed. At the hearing, counsel for plaintiff acknowledged that if the Sherpas were classified with a DEMIL code that did not allow for disposal, such as DEMIL code C, then the transfer to plaintiff would have been improper and the government would have the right to seize the Sherpas pursuant to § 2790. Counsel argued, however, that plaintiff would not have agreed to obtain the Sherpas if they had been classified as DEMIL code C because it would have known that, under those circumstances, the contract was not even worth the paper it was written on. Rather, plaintiff contends that it relied on the original transfer documents – known as a DD Form 1348 – from February 2013, which showed that the planes were classified as DEMIL code A and ostensibly allowed them to be transferred from the Department to plaintiff.

At the hearing, the attorneys for the government did not take issue with plaintiff's counsel's representation that there had been a DEMIL code A classification on the original transfer documents for the Sherpas. Rather, the government argued that even if the planes were classified as DEMIL code A, the Department still had to obtain approval from both the State Coordinator and the DOD before the Sherpas could physically be moved.[2] Plaintiff argued that the fact the planes were moved, and that the State Coordinator was aware that the planes had moved, is prima facie evidence of her approval of the transfer. Although additional evidence from the government at a later stage may refute this preliminary showing, the court is satisfied that plaintiff has met the low threshold to show a "better than negligible" chance that the Sherpas were properly transferred to plaintiff. Accordingly, plaintiff has satisfied the first element necessary to obtain a TRO.

## 2. No Adequate Remedy at Law

Plaintiff has also demonstrated that it has no adequate remedy at law for any damages that would result from the government seizing the Sherpas. At the hearing, plaintiff presented evidence showing several contracts it already has in place for use of the Sherpas that would go unfulfilled if it did not have the planes, and it explained that non-performance of these contracts would likely result in a poor past performance review from the Air Mobility Command, which could in turn result in the loss of future contracts. Given these unique circumstances, the court finds that plaintiff has no adequate remedy at law for its potential harm because calculating future money damages would be difficult to determine and speculative. See Lawson Prods., Inc. v. Avnet, Inc., 782 F.2d 1429, 1440 (7th Cir. 1986) (noting that "the difficulty in calculating future profits can often justify the finding of an irreparable injury with no adequate remedy at law"); see also Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 813 (7th Cir. 2002) (concluding that the plaintiff lacked an adequate remedy at law "[b]ecause of the difficulty in assessing the damages associated with a loss of goodwill"). Accordingly, plaintiff has satisfied the second element necessary to obtain a TRO.

## 3. Irreparable Harm

---

[2]After the hearing, the government submitted a declaration of Michael O. Cannon, the Director of DLA, Disposition Services. In the declaration, Cannon states, among other things, that permission to transfer the Sherpas was not requested, and that he would not have approved such a request. He also indicates that "DoD policies and agreements with participants require them to return all aircraft regardless of the assigned demilitarization code." However, there has been no explanation for why this declaration was not provided at the hearing, and the court finds it to be untimely for purposes of the court's decision on the motion for a TRO, as plaintiff has not had an opportunity to respond to the declaration. Accordingly, the court declines to consider the declaration at this time.

4

Similarly, plaintiff has demonstrated that it will suffer irreparable harm if the TRO was not issued. Plaintiff has a contract with the Marines that requires the Sherpas to be ready for flight on Friday, March 20, 2015, and without the TRO in place, plaintiff may be unable to fulfill that contract. At the hearing, plaintiff argued that its business would go under if it could not enter into these contracts with the different branches of the military, and the owner of Win Win Aviation testified that these planes are integral to its business operation. Certainly, if plaintiff's business was no longer able to continue as a result of losing these planes, that would qualify as irreparable harm. Accordingly, the court finds that plaintiff has satisfied the third element of the threshold showing necessary to obtain a TRO.

### 4. Balance of the Harms

During the balancing phase of the analysis, "the court must compare the potential irreparable harms faced by both parties to the suit–the irreparable harm risked by the moving party in the absence of a [TRO] against the irreparable harm risked by the nonmoving party if the [TRO] is granted." Girl Scouts, 549 F.3d at 1100. "[T]he goal of the court is to choose the course of action that minimizes the costs of being mistaken." Id.

Here, the court finds that the balance of the harms weighs in favor of granting the requested TRO. The court recognizes that, under the sliding scale approach, the balance of harms needs to weigh heavily in plaintiff's favor given that the likelihood of success on the merits is not overly strong, even though plaintiff did meet the "better than negligible" threshold. On plaintiff's side, the potential harm is very high, including default on current contracts, loss of future contracts, and a potential of going out of business without access to the Sherpas, which are needed to fulfill its military contracts. On the government's side, there has been no showing of what specific harm it would suffer if it had to wait for 14 days before it could recover what it considers obsolete aircraft. The court must also take into account any public interest concerns, see id., which also weighs in favor of granting the TRO. The DOD, through its various branches of the military, have contracted to use the Sherpas currently in plaintiff's possession for training exercises, and there is a public interest in having them complete that training. Although the government suggested that there were other avenues through which these military units could obtain the necessary aircraft for its training exercises, there has been no indication that such alternative arrangements could happen within such a short period of time, which would impact plaintiff's contract with the Marines at the least. Accordingly, taking into account all these varying factors, the court finds that the balance of harms supports issuance of the TRO.

### III.  CONCLUSION

For the reasons set forth above, the court grants plaintiff's motion for a TRO. Defendants are prohibited from taking any further action to seize, impound, de-register, or otherwise exercise control over the two Sherpas in plaintiff's possession, including invoking any rights the United States may have to recover the planes under 10 U.S.C. § 2790. Absent further order of the court, the TRO will expire 14 days after entry. See Fed. R. Civ. P. 65(b)(2).

Under Rule 65, a court may not issue a temporary restraining order unless the movant "gives security in an amount that the court considers proper to pay the costs and damage sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The purpose

5

of a security bond is to compensate the defendants, in the event they prevail on the merits, for the harm that an injunction entered before the final decision caused them. See Ty, Inc. v. Publ'ns Int'l Ltd., 292 F.3d 512, 516 (7th Cir. 2002). Taking into account the value of the aircraft at issue in this case, the court will require plaintiff to post a security bond in the amount of $1,000,000 pursuant to Rule 65(c).

Date: 3/16/2015

ENTER:

_____

FREDERICK J. KAPALA

District Judge